|   |   |
|---|---|
| | |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DEBRA J. A.,[1] | Case No. 5:19-cv-00688-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| ANDREW M. SAUL,[2] Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Debra J. A. ("Plaintiff") filed a Complaint on April 16, 2019, seeking review of the Commissioner's denial of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on February 12, 2019. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Andrew M. Saul, now Commissioner of the Social Security Administration, is substituted as defendant for Nancy A. Berryhill. See Fed. R. Civ. P. 25(d).

# I.
# BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on July 29, 2015, alleging disability commencing on May 1, 2013. AR 19, 31, 39, 232-45. On May 2, 2018, after her applications were denied (AR 104-05, 132-33), Plaintiff, represented by counsel, testified via video before an Administrative Law Judge ("ALJ"), and a vocational expert ("VE") testified telephonically. AR 19, 39-77. At the hearing, Plaintiff amended her alleged onset date to January 1, 2014. AR 19, 57-58.

On May 23, 2018, the ALJ issued a written decision concluding Plaintiff was not disabled. AR 15-31. The ALJ found Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date and had severe impairments of degenerative disc disease of the lumbar spine; arthropy of the bilateral knees; chronic obstructive pulmonary disease ("COPD"); overactive bladder; and obesity. AR 21-25. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and had the residual functional capacity ("RFC") to perform sedentary work except she: (1) can lift, carry, push, and pull up to 10 pounds occasionally, and less than 10 pounds frequently; (2) can sit for up to six hours in an eight-hour workday; (3) can stand and/or walk for up to two hours in an eight-hour workday; (4) must be allowed to change positions every 15 minutes; (5) can occasionally climb ramps and stairs; (6) must not climb ladders, ropes, or scaffolds; (7) can occasionally balance, stoop, kneel, crouch, and crawl; (8) should avoid walking on uneven terrain; (9) should avoid concentrated exposure to hazards; (10) should avoid concentrated exposure to extreme cold and heat; (11) should avoid concentrated exposure to wetness; (12) should avoid concentrated exposure to dust, fumes, odors, and pulmonary irritants; and (13) must have a workstation in close proximity to a restroom. AR 25-26.

The ALJ further found that Plaintiff could perform her past relevant work as an office manager (Dictionary of Occupational Titles 169.167-034) because that work did not require performance of work-related activities precluded by her RFC. AR 30. Thus, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act, from the amended alleged onset date of January 1, 2014, through the date of the decision. AR 30-31. Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, making the ALJ's decision the agency's final decision. AR 5-10.

## II.
## LEGAL STANDARDS

**A. <u>Standard of Review</u>**

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); <u>Parra v. Astrue</u>, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. <u>Id.</u> To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. <u>Id.</u> at 720-21; see also <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

### B. Standard for Determining Disability Benefits

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Ford v. Saul, __ F.3d __, No. 18-35794, 2020 WL 829864, at *2-3 (9th Cir. Feb. 20, 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past

4

relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

    The claimant generally bears the burden at each of steps one through four to show she is disabled, or she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show she is disabled. See, e.g., Ford, 2020 WL 829864 at *2; Molina, 674 F.3d at 1110; However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

### III.
### DISCUSSION

The parties present three disputed issues, reordered as:

Issue No. 1: Whether the ALJ properly considered Plaintiff's subjective testimony and statements;

Issue No. 2: Whether the ALJ properly considered the presence of a medically determinable mental impairment; and

Issue No. 3: Whether the ALJ properly considered the need for a close-proximity restroom.

Jt. Stip. at 4.

## A. Plaintiff's Subjective Symptom Testimony

In Issue No. 1, Plaintiff contends the ALJ failed to state proper reasons for rejecting her symptom and limitation testimony. Jt. Stip. at 20-23, 26-27.

### 1. Applicable Law

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity" of the symptoms. Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Id. at 885 (citation omitted). But if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Finally, the ALJ's credibility finding may be upheld even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

### 2. Analysis

To support her applications for benefits, Plaintiff submitted at least three disability reports and a function report explaining her symptoms, conditions, limitations, and medications. AR 268-75, 290-98, 302-15.

At the May 2018 hearing, Plaintiff, almost 62 years old at the time, testified as follows. She worked from 2005 until 2013 as an office manager for a psychiatric nurse practitioner, handling reception, appointments, records, and schedules, and helped with administration of sample medications. AR 44-

46, 62-65. Her employer hired an assistant to help her the last three years she worked due to her difficulties walking, bending, standing, and lifting. AR 46-47, 63-64. Prior to her office manager position, she was a bakery clerk in a grocery store from 2001 to 2005. AR 47-48.

She stated she can no longer work due to symptoms with her bladder, back, feet, knees, breathing condition, and mental health. AR 51, 56. Regarding her bladder, during the day she needs to use the bathroom twice every hour; at night she relieves herself every two hours, for a total of at least four times. AR 51, 56, 58-60. It takes her about 10 minutes to use the restroom. AR 59. She experiences leakage, so she uses pads and stays close to a restroom. AR 56-57. Sometimes she does not make it on time, and she has previously had accidents at work. AR 57-58, 60. Physician's Assistant John Batin,[3] whom she sees monthly, prescribed Vesicare for her bladder, but discontinued it. AR 53, 60-61. She also has constipation and diarrhea. AR 59.

Plaintiff describes that her spine is curving, which limits her ability to stand for only about 10 minutes. AR 52. She can sit for a couple of hours, but then must elevate her feet about three times per day, 20 minutes per time or until she feels comfortable. AR 52, 62. Her feet can also go numb. AR 52. Mr. Batin recommended back surgery. AR 62. Two doctors said her knees need to be replaced. AR 53. She has had injections in her knees. AR 53. She also suffers from COPD. AR 52. She can walk only 75 feet without experiencing shortness of breath. AR 51-52. She uses an inhaler. AR 52.

Mentally, she says she is "not there anymore," suffering from depression and anxiety. AR 52, 54. She cries, yells, and sits in her bedroom all the time. AR 55. She also feels overwhelmed and panics and cannot be in crowds. Id.

---

[3] Mr. Batin is a certified physician's assistant ("PA-C") in primary care physician ("PCP") Dr. Pablo Sobero's office. See AR 415.

Plaintiff takes antidepressants and medication for her anxiety, including Abilify and Lorazepam, but they are not working. AR 55, 67. She also takes pain medication, including Tylenol with Codeine, twice a day. AR 66. It gives her a dry mouth and makes her dizzy. AR 66.

She can lift 15 pounds, but she would not be able to carry an object of that weight across a room. AR 54. She can sit for just a few hours. AR 54. She has a driver's license but does not drive because she becomes panicky and nervous. AR 45, 66. She lives in a house with her boyfriend. AR 65. He does the housework. AR 65. She doesn't cook, although "[o]nce in a great while" she will prepare something that doesn't require her to stand over the stove. AR 65. She does not do laundry or yardwork, or shop. AR 65. She uses a seat when she bathes. AR 65.

The ALJ considered Plaintiff's disability reports and function report to be "of the same general nature as [Plaintiff's] subjective complaints from [her] hearing testimony." AR 27. The ALJ found her medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements "concerning the intensity, persistence[,] and limiting effects of [the] symptoms" were "not entirely consistent" with the medical evidence and other evidence in the record for the reasons explained in the decision. AR 26. Those reasons were that Plaintiff's subjective statements were not entirely consistent with: (1) her conservative treatment; and (2) the objective medical evidence. AR 27-28; see also Jt. Stip. 23-26.

The ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained." AR 27. Immediately thereafter, the ALJ states, regarding Plaintiff's degenerative disc disease of the lumbar spine and arthropy of the

bilateral knees, the ALJ states her "medical history is not fully consistent with the alleged severity of her symptoms," citing examples. Id. Inconsistency between Plaintiff's statements and the objective evidence, alone, is not a sufficient basis to support a credibility determination. See Rollins, 261 F.3d at 856-57; Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (lack of objective medical evidence to support subjective symptom allegations cannot form the sole basis for discounting pain testimony); Dschaak v. Astrue, 2011 WL 4498835, at *1 (D. Or. Sept. 27, 2011) ("[O]nce the[] other bases for the ALJ's decision were discarded as erroneous, the ALJ's credibility determination could not rely solely on conflicts with the medical evidence.").

    The only other rationale offered by the ALJ for rejecting Plaintiff's symptom testimony that is apparent in the decision, and the only other rationale defended by the Commission here, is the ALJ statement that Plaintiff's "treatment has been on the conservative side, consisting primarily of medication management and a series of trigger point injections in late 2015." AR 27. The ALJ then discussed the series of trigger point injections, a referral to a pain specialist, and Mr. Batin's prescription of Neurontin (Gabapentin)[4] and Tylenol with Codeine. AR 27-28. The Court finds ALJ's rationale based on conservative treatment is not supported here.

    First, several courts have cast doubt that injections are conservative treatment or have found they are not conservative. See, e.g., Garrison v. Colvin, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) (expressing doubt that "shots to the neck and lower back qualify as 'conservative' medical treatment"); Contreras v. Berryhill, 2020 WL 619792, at *4 (N.D. Cal. Feb. 10, 2020)

---

[4] See Warren v. Battle, 2020 WL 61037, at *4 (D. Or. Jan. 6, 2020) (Neurontin and Gabapentin are synonymous); Johnson v. Chau, 2019 WL 7037654, at *7 (E.D. Cal. Dec. 20, 2019).

9

(stating "[n]umerous courts have rejected the argument that trigger point injections are 'conservative'"; collecting cases). This is especially true when injections are combined with other treatment, such as Plaintiff's strong pain medication[5] and referral to a pain specialist. See, e.g., Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (suggesting powerful pain medications and injections were not conservative treatment); Christine G. v. Saul, 402 F. Supp. 3d 913, 926 (C.D. Cal. 2019) ("Many courts have previously found that strong narcotic pain medications and spinal epidural injections are not considered to be 'conservative' treatment.'"; collecting cases); Eldridge v. Berryhill, 2018 WL 2357147, at *9 (S.D. Cal. May 23, 2018) (medication treatment, including Gabapentin and Tylenol with Codeine, combined with pain-specialist referral and injections is "far from conservative").

Second, while the treatment identified by the ALJ in the credibility determination is sufficient to refute the conservative-treatment finding, it does not represent the full extent and history of Plaintiff's treatment. In addition to Neurontin and Tylenol with Codeine, Plaintiff has been prescribed Hydrocodone and Aspirin for pain (AR 306, 312, 325), Levothyroxine for her thyroid (AR 306, 325), Meloxicam for her upset stomach (AR 306, 312), Metoprolol for high blood pressure (AR 306, 312, 325), oxygen, Pro-Air inhaler, and Symbicort for COPD (AR 306, 312, 325, 429), Vesicare for her bladder (AR 60-61), and Abilify, Lorazepam, Wellbutrin, Ativan, Brintellix for her mental health issues (AR 287, 297, 312, 325, 416-18, 422-23, 426, 429, 432, 435-36, 441, 444). While some of these, by themselves, could be considered conservative, collectively they demonstrate a fairly intensive treatment regimen

---

[5] See Eldridge v. Berryhill, 2018 WL 2357147, at *9 (S.D. Cal. May 23, 2018) (describing Gabapentin and Tylenol with Codeine as prescription medications to treat "severe pain"); Yang v. Barnhart, 2006 WL 3694857, at *4 (C.D. Cal. Dec. 12, 2006) (describing Tylenol with Codeine as a "potent drug" to alleviate pain).

through the years. Moreover, many medications were discontinued because they were not providing relief, corroborating Plaintiff's statements about her symptom severity. This heavy and multi-faceted medicinal treatment, combined with Plaintiff's injections, is not "on the conservative side." AR 29; see, e.g., Lapeirre-Gutt, 382 F. App'x at 664; Christine G., 402 F. Supp. 3d at 926; Eldridge, 2018 WL 2357147 at *9; Wilson v. Comm'r of Soc. Sec., 2016 WL 4402108, at *5 (E.D. Cal. Aug. 18, 2016) (opioid, anti-convulsant, and psychotropic medication, along with CPAP machine, and two trigger point injections by a pain-management doctor is not "minimal treatment").

      Third, in addition to the pain-management referral, in August 2017 PA-C Batin referred Plaintiff to an orthopedic surgeon for her right knee and shoulder. AR 436. Around that time, Dr. Sobero also referred Plaintiff for further diagnostic imaging because her "symptoms ha[d] not responded satisfactorily to conservative medical management." AR 433. These referrals and the finding less drastic measures were not alleviating Plaintiff's symptoms casts further doubt on a finding that Plaintiff's symptoms have been treated by measures "on the conservative side." See Carolyn P. v. Comm'r, Soc. Sec. Admin., 2019 WL 6896905, at *4 (D. Or. Dec. 18, 2019) (ALJ did not provide clear and convincing reason to discount testimony where record reflected reports that claimant responded to conservative treatment unsuccessfully); Eldridge, 2018 WL 2357147 at *9 (referrals to rheumatology specialist and pain specialist, along with other factors, belied conservative treatment); Wilson, 2016 WL 4402108 at *5 (referrals to pain and sleep specialist, along with other factors, belied "minimal treatment"); Rodriguez v. Colvin, 2013 WL 3052971, at *3 (C.D. Cal. June 17, 2013) (ALJ's finding that claimant obtained relief through conservative treatment "clearly not supported by substantial evidence" where medical report found claimant failed to respond to conservative measures).

For the foregoing reasons, the Court finds that the ALJ's conclusion regarding conservative treatment as a basis to discount Plaintiff's symptom testimony is not a clear and convincing reason supported by substantial evidence. See Treichler, 775 F.3d at 1102; Reddick, 157 F.3d at 722-23 (impermissible for ALJ to develop evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports.").

Thus, assuming without deciding that the ALJ properly discounted the symptom testimony based on inconsistency with the medical evidence, as such ground cannot be the sole basis to do so, the ALJ erred. Here, the Court cannot conclude the ALJ's error was harmless. See, e.g., Brown-Hunter, 806 F.3d at 492-93 (ALJ's failure adequately to specify reasons for discrediting claimant testimony "will usually not be harmless"). In light of the significant functional limitations reflected in Plaintiff's subjective statements, the Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the claimant's testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006).

**B.     Remand is appropriate.**

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where further proceedings would serve no useful purpose or where the record has been fully developed, a court may direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). A remand for further proceedings is appropriate where outstanding issues must be resolved before a determination of disability can be made and it is not clear from the record that the claimant is disabled. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Here, the Court concludes remand for further proceedings is warranted. The resolution of Plaintiff's credibility affects other issues raised in the Joint Stipulation. See e.g., Vaughn v. Berryhill, 242 F. Supp. 3d 998, 1010 (E.D. Cal. 2017) (dispensing of exhaustive analysis of plaintiff's remaining issues because "[t]he ALJ's . . . evaluations of [p]laintiff's credibility . . . are inescapably linked to conclusions regarding the medical evidence"); Alderman v. Colvin, 2015 WL 12661933, at *8 (E.D. Wash. Jan. 14, 2015) (remanding in light of interrelated nature of ALJ's decision to discount claimant's credibility and give appropriate consideration to physician's opinions, step-two findings, and step-five analysis). Because it is unclear, considering these issues, whether Plaintiff is in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell, 336 F.3d at 1115-16. The parties may freely take up all issues raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

Accordingly, on remand, the ALJ shall reassess Plaintiff's subjective complaints, and then reassess Plaintiff's RFC in light of the subjective symptom testimony and proceed through the remaining steps of the disability analysis to determine what work, if any, Plaintiff is capable of performing that exists in significant numbers.

## IV.

## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: March 11, 2020

JOHN D. EARLY
United States Magistrate Judge

13